Ahren A. Tiller, Esq. [SBN: 250608
BLC LAW CENTER, APC
1230 Columbia St., Ste. 1100
San Diego, CA 92101
Phone: (619) 894-8831
Facsimile: (866) 444-7026
Email: ahren.tiller@blc-sd.com

Attorneys for Plaintiff
JOSE URISTA, on behalf of himself
and all others similarly situated,

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JOSE URISTA, on behalf of himself
and all others similarly situated,

Plaintiffs,

v.

WELLS FARGO & COMPANY and
WELLS FARGO BANK, N.A.,

Defendants.

Case No. **'20 CV 1689 H    AHG**

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF:**

1. Cal. Civ. Code § 1785 et. seq.
2. Cal. Civ. Code § 1788 et seq.
3. Cal. Bus. & Prof. C. § 17200
4. Request for Declaratory Relief
5. Request for Injunctive Relief
6. Unjust Enrichment

JOSE URISTA ("Plaintiff") individually and on behalf of the proposed class of all those similarly situated, brings this class action lawsuit for damages and injunctive relief resulting from the unlawful actions committed by Defendants, Wells Fargo & Company, and Wells Fargo Bank, N.A. (collectively referred to hereafter as: "Wells Fargo" or the "Defendants"), as described herein.

## **INTRODUCTION**

1.       Wells Fargo is, among other things, a mortgage servicing company

operating throughout the United States.

2.      As part of its mortgage servicing operations, Wells Fargo collects the monthly mortgage payments of borrowers (like Plaintiff and the putative class members), and those funds are, in turn, applied to principal and interest, taxes and insurance as well as any other fees and charges that may have been assessed.

3.      Wells Fargo earns revenue from mortgage loan servicing in several ways.  For instance, Wells Fargo earns a per-loan servicing fee established by its servicing agreements with the owners of the loans that are entitled to payment of the principal and interest payments set forth in the mortgage loan instruments.

4.      Wells Fargo also earns "float" income on unapplied funds, which accrues for the time between when consumers pay and when funds are remitted to the loans' owners.

5.      Additionally, Wells Fargo (as the loan servicer) retains all or part of certain fees it collects from borrowers, such as late charges, and for loans owned by various government sponsored enterprises ("GSEs"), like Ginnie Mae, Fannie Mae, and Freddie Mac, Wells Fargo earns fees for, among other things, filing incentive payments after loans are placed in forbearance.

6.      Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act in order to, among many other things, provide some relief to millions of American homeowners struggling to make their mortgage payments as a result of the economic difficulties caused by the pandemic.

7.      The CARES Act instructed mortgagees and servicers to create mortgage forbearance provisions for all federally-backed mortgages, which includes loans serviced by Defendants on behalf of GSEs that acquire, securitize and insure repayment of the majority of consumer mortgage loans in America.

8.      The CARES Act makes it abundantly clear that participation in a COVID-19 mortgage forbearance program is entirely voluntary; that is, a mortgagor

must be informed of the various terms and conditions of the program and then make a conscious decision to enter the program.

9.    According to the Consumer Financial Protection Bureau ("CFPB"), before a bank servicing a loan can grant forbearance, it is supposed to request and to receive an attestation of a COVID-19-related financial hardship from the borrower:

> REQUIREMENTS FOR SERVICERS.— (1) IN GENERAL.—***Upon receiving a request for forbearance from a borrower under subsection (b)***, ***the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19 emergency*** and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.[1]

10.    As detailed herein, Wells Fargo unilaterally and without consent, and certainly without requesting or receiving any financial hardship attestation, opted unwitting clients into its COVID-19 mortgage forbearance program.

11.    In addition, Wells Fargo put through secondary requests for forbearance on behalf of homeowners who had asked to participate in the program initially but who did not ask for extensions and no longer wanted to be in the forbearance program.

12.    Numerous media reports suggest that these practices, including the

---

[1]    https://www.congress.gov/116/bills/hr748/BILLS-116hr748enr.pdf (last visited August 14, 2020) (emphasis added).

complete lack of documentation, is not limited to a few persons.

13.     Since the advent of COVID-19, approximately 5.5 million homeowners have participated in a mortgage forbearance program, either knowingly or unknowingly.  Upon information and belief, Wells Fargo has deferred approximately 2.5 million payments and it is not clear whether *any* of those affected supplied such documents to Wells Fargo.[2]

14.     The requirement of a volitional act on the part of mortgagor participants is intentional as mortgage forbearance has serious consequences for homeowners, including an inability to obtain additional credit and/or to refinance any existing loans.

15.     As a result, those homeowners, including Plaintiff, suffered damages, including, but not limited to, an inability to access credit, to refinance to lower interest rates (and away from particular mortgage servicers like Wells Fargo – which is especially egregious during a period in time in which mortgage interest refinance rates are at historically low rates), and in dealing with the difficult situation of removing their mortgages from a program they did not want.

16.     Defendants benefit by unilaterally opting unwitting homeowners into its forbearance program in a number of ways, including retaining borrowers who might otherwise refinance their mortgages with other institutions.

17.     Interest rates are at all-time lows and many homeowners are seeking to take advantage of these historically low rates by refinancing; if an account is placed into a forbearance program, those borrowers cannot typically refinance for many months, if not years, even after bringing the account current.

18.     Defendants' actions are, unfortunately, yet another example of Wells Fargo opportunistic and illegal actions that seem to only benefit it financially

---

[2]     *See, e.g.*, https://www.nbcnews.com/business/personal-finance/more-wells-fargo-customers-say-bank-decided-pause-their-mortgage-n1234610 (last visited August 14, 2020).

without any regard for the needs of its customers *even in the throes of a catastrophic pandemic*.

19.    Wells Fargo recently agreed to pay $3 Billion to resolve their potential criminal and civil liability stemming from their practice of pressuring employees to meet unrealistic sales goal that led thousands of employees to provide millions of accounts or products to customers under false pretenses or without consent, often by creating false records or misusing customers' identities.[3]

20.    The recent revelations regarding Defendants' practice of involuntary and without proper documentation putting homeowners' in unwanted forbearance program prompted the following statement from Senator Sherrod Brown of Ohio, the ranking Democrat on the Banking Committee:

> Once again it seems that Wells Fargo's sloppy service and shoddy management are hurting consumers.  Wells Fargo should immediately address each of these complaints and make changes to ensure that no borrower finds themselves worse off from actions that their servicer takes without their consent or notice.[4]

21.    In addition to Senator Brown's public statement, Senators Elizabeth Warren of Massachusetts and Brian Schatz of Hawaii recently wrote a letter to the Chief Executive Officer of Wells Fargo seeking information regarding its now well-documented practice of putting mortgagors into forbearance programs without their consent.[5]

22.    The senators' July 29, 2020 letter stated that Wells Fargo "appears to

---

[3]    https://www.justice.gov/opa/pr/wells-fargo-agrees-pay-3-billion-resolve-criminal-and-civil-investigations-sales-practices (last visited August 14, 2020).

[4]    https://www.nbcnews.com/business/personal-finance/more-wells-fargo-customers-say-bank-decided-pause-their-mortgage-n1234610 (last visited August 14, 2020).
[5]
https://www.warren.senate.gov/imo/media/doc/2020.07.29%20Letter%20to%20Wells%20Fargo%20on%20Forbearance%20Filings.pdf (last visited August 14, 2020).

1  be incapable of self-governance," and noted that reports of borrowers being placed
2  in forbearance programs they did not want "raise even more questions about the
3  inability of Wells Fargo and its leadership team to comply with the law and the
4  needs of its customers."

5      23.    The letter, which called for a response by August 12, 2020,
6  proclaimed that "if these reports are true, they represent one more addition to a long
7  list of inexcusable actions by Wells Fargo at customers' expense" because such
8  conduct can affect borrowers' credit by suggesting that they are not making
9  payments even when they are and can prevent them from refinancing their home
10 loans to take advantage of rock-bottom interest rates.

11     24.    Wells Fargo, for its part, has not denied these allegations; through its
12 spokesperson Tom Goyda, Wells Fargo states that "[i]n the spirit of providing
13 assistance, [it] may have misinterpreted customers' intentions in a small number of
14 cases."[6]

15     25.    Plaintiff alleges as follows upon personal knowledge as to themselves
16 and their own experiences and, as to all other matters, upon information and belief
17 including due investigation conducted by their attorneys.

18

19                            **PARTIES**

20     26.    Plaintiff Jose Urista is an individual who, at all relevant times, resided
21 in San Diego County, California.

22     27.    Defendant Wells Fargo & Company is a Delaware corporation
23 headquartered in San Francisco, California.

24     28.    Defendant Wells Fargo & Company is a diversified financial services
25 company that provides banking, insurance, investments, mortgage banking and other
26 products and services to consumers, businesses and other institutions.

27

28 [6]    https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited August 14, 2020).

29.     Defendant Wells Fargo & Company is reported to have approximately $1.9 trillion in assets.

30.     Defendant Wells Fargo & Company is the parent corporation of Defendant Wells Fargo Bank, N.A.

31.     Upon information and belief, Defendant Wells Fargo & Company exercises specific and financial control over the operations of Wells Fargo Bank, N.A., dictates the policies, procedures and practices of Defendant Wells Fargo Bank N.A., exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the ill-gotten gains described herein.

32.     Defendant Wells Fargo Bank, N.A. is a national association that is headquartered in South Dakota.

33.     Defendant Wells Fargo Bank, N.A. conducts mortgage servicing operations through its Wells Fargo Home Mortgage division, which is headquartered in Des Moines, Iowa.

34.     Plaintiff's mortgage is currently serviced by Defendant Wells Fargo Bank, N.A..

## JURISDICTION & VENUE

35.     Subject matter jurisdiction exists in this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiff Jose Urista is a resident of a different state (California) than that of Defendant Wells Fargo & Company who is incorporated in Delaware and Defendant Wells Fargo Bank, N.A., which has its principal place of business in South Dakota.

36.     When aggregated among a proposed class in the thousands, the amount in controversy exceeds $5,000,000—exclusive of interest and costs—the threshold for federal court jurisdiction.

37.     Both diversity jurisdiction and the damages requirement under CAFA

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

1   are satisfied, and this Court therefore has subject matter jurisdiction.

2        38.    This Court has personal jurisdiction over Defendant Wells Fargo &

3   Company which has its principal place of business in San Francisco, California and

4   is authorized to do business in California, transacts business in California and

5   maintains sufficient minimum contacts in California.

6        39.    This Court has personal jurisdiction over Defendants Wells Fargo

7   Bank, N.A., because it is authorized to do business in California, transacts business

8   in California and maintains sufficient minimum contacts in California.

9        40.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and

10  (c) because a substantial part of the events giving rise to these claims occurred San

11  Diego, CA which is in this District, and Defendants regularly conduct business in

12  this District.

13

14                        **FACTUAL ALLEGATIONS**

15  **I.    The Federal Government Passed the CARES Act to Help with the
         Economic Harm Caused by the COVID-19 Pandemic**

16

17       41.    On March 11, 2020, the World Health Organization ("WHO")

18  declared the COVID-19 outbreak a global pandemic.

19       42.    On March 13, 2020, the President issued the Coronavirus Disease

20  2019 (COVID-19) Emergency Declaration, which declared that the COVID-19

21  pandemic was of "sufficient severity and magnitude to warrant an emergency

22  declaration for all states, territories and therg District of Columbia."

23       43.    The economic fallout from COVID-19 was immediate and continues

24  to be considerable.

25       44.    On March 25, 2020, in response to the economic damage beginning

26  to be felt by Americans throughout the country, the United States Senate passed the

27  Coronavirus Aid, Relief and Economic Security ("CARES") Act.

28       45.    The CARES Act was passed by the House of Representatives the

following day and signed into law on March 27, 2020. (See generally CARES Act, Public Law No. 116-136).

46.    The CARES Act is the single-largest economic stimulus bill in United States' history, allocating approximately $2.2 trillion of support to individuals and business affected by the COVID-19 pandemic.

**II.    The CARES Act Provides Relief to American Homeowners with Government-backed Mortgages.**

47.    A substantial part of the coronavirus aid package was designed to assist American homeowners with federally backed mortgages who were in distress as a result of the COVID-19 pandemic.

48.    First, the CARES Act assisted American homeowners with Government Sponsored Enterprise ("GSE") backed mortgages by prohibiting their lenders and mortgage services from beginning a judicial or non-judicial foreclosure or from finalizing a foreclosure judgment or sale through at least August 31, 2020.

49.    Second, and most relevant to this action, the CARES Act provided homeowners with GSE-backed loans experiencing financial hardships because of COVID-19 with the option to request up to 180 days of forbearance on their mortgage.

50.    Specifically, Section 4022(b) provides, in relevant part, that:

(1)  IN GENERAL.—During the covered period [beginning February 15, 2020 and ending on June 30, 2020], a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency ***may request*** forbearance on the Federally backed mortgage loan, regardless of delinquency status, by—

(A) submitting a request to the borrower's servicer and

(B) affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.

(2)    DURATION OF FORBEARANCE.—**Upon a request by a borrower for forbearance** under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days **at the request of the borrower**, provided that, **at the borrower's request**, either the initial or extended period of forbearance may be shortened.

*See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat. 281, § 4022(b) (emphasis added).

51.    Section 4022(c) provides, in relevant part, that:

**Upon receiving a request for forbearance from a borrower under subsection (b),** the servicer shall **with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency** and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provided the forbearance up to 180 days, which may be extended for an additional period of up to 180 days **at the request of the borrower**, provided that, **the borrower's request for an extension** is made during the covered period, and, **at the borrower's request**, either the initial or extended period of forbearance may be shortened.

*Id.*, § 4022(c) (emphasis added).

52.    These provisions make it abundantly clear that participation in a mortgagee's or servicer's mortgage COVID-19 forbearance program is voluntary and to be initiated only at the request of the mortgagor clients.

53.    As explained by the CFPB, a forbearance is "when [] mortgage servicer[s] or lender[s] allow [ mortgagors] to pause (suspend), or reduce [their]

mortgage payments for a limited period of time while [they] regain [their] financial footing."[7]

54.    Notably, while "the CARES Act provides many homeowners with the right to have all mortgage payments completely paused for a period of time," "[f]orbearance doesn't mean [mortgagors'] payments are forgiven or erased. [Rather, mortgagors] are still required to repay any missed or reduced payments in the future, which in most cases may be repaid over time."[8]

55.    The CARES Act provided for an extension of the forbearance period (for a total of up to 360 days) for homeowners that continued to experience difficulty in paying their mortgages once their initial 180-day term expired.[9]

56.    In order for mortgagors to avail themselves of the COVID-19 mortgage forbearance option, they were instructed to contact their loan servicer to obtain information and, if appropriate, request forbearance.[10]

### III. The Implementation of the CARES Act is Met with Confusion & Uncertainty.

[7]    https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/mortgage-relief/ (last visited August 14, 2020).

[8]    *Id.*

[9]    https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/after-you-receive-relief/ (stating that "[i] f you still face financial hardship, you can request a forbearance extension**.** Under the CARES Act, if you have a federally or GSE-backed mortgage, you also can request and obtain an extension of the forbearance for up to an additional 180 days) (last visited August 14, 2020).

[10]    *See*    https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/request-forbearance-or-mortgage-relief/ (last visited August 14, 2020).

57.     While the CARES Act was passed quickly and with laudable intentions, there has been a tremendous amount of consumer confusion around many aspects of the Act including the forbearance program.

58.     Some of the terms are relatively straightforward in that lenders are not permitted to report forborne payments to the credit bureaus, which means that borrowers who request forbearance are not supposed to see any impact on their credit scores as a result of their participation in forbearance programs.

59.     Additionally, the initial term of the mortgage forbearance program was designed to be 180 days and, after that term expires, lenders were instructed to work with borrowers to—upon request by the homeowners—extend the forbearance or establish a repayment plan.[11]

60.     Leaving aside the issue of whether mortgagors are even aware that they are in a mortgage forbearance program, the provision that has caused the most confusion is that participating mortgagors often do not know if they have to get their mortgage current at the conclusion of the forbearance period or how their lender and/or servicer will treat the deferred payments.

61.     Fannie Mae and Freddie Mac attempted to address the confusion attendant to the post-CARES Act forbearance loss mitigation landscape when they introduced the "COVID-19 Payment Deferral" option with Lender Letter (LL-2020-

---

[11]     *See* https://benefits.va.gov/homeloans/cares-act-frequently-asked-questions.asp#FAQ5 (stating that "[f]orbearance in the CARES Act is broken down into two pieces; an *initial* period and an *additional* period.  For the initial period, you may notify your mortgage servicer that you are financially affected by the COVID-19 emergency and request up to 180 days of forbearance. For the additional period, you may notify your mortgage servicer that you are still financially affected by the COVID-19 emergency and request up to 180 additional days of forbearance.") (last visited August 14, 2020).

07) and Bulletin 2020-15.[12]

62.    The COVID-19 Payment Deferral instructs that all forborne payments (up to 12 months) are to be placed into a non-interest-bearing balance to be paid back at the end of the loan term.

63.    The COVID-19 Payment Deferral brought Fannie Mae and Freddie Mac in line with the United States Department of Housing and Urban Development's ("HUD") COVID-19 National Emergency Standalone Partial Claim option, which provides borrowers with a junior mortgage (zero additional interest, no fees) not payable until the mortgage is paid off, comprised of the total amount of payments missed during a CARES Act forbearance period.[13]

64.    Although various government entities attempted to clarify the law, the mortgagees and servicers fail to comply as evidenced by, among other things, a report published (in late April) by HUD's Office of Inspector General ("OIG"), which conducted a study of the top 30 mortgage servicers 22 days after the CARES Act was enacted.

65.    That study, entitled Some Mortgage Loan Servicers' Websites Offer Information about CARES Act Loan Forbearance That Is Incomplete, Inconsistent, Dated, and Unclear, analyzed the information that mortgagees and servicers were providing to borrowers regarding forbearance.[14]

---

[12]    Lender Letter 2020-07 is available here: https://singlefamily.fanniemae.com/media/22916/display and Bulletin 2020-15 is available here: https://guide.freddiemac.com/app/guide/bulletin/2020-15 (last visited August 14, 2020).

[13]    HUD's Mortgagee Letter 2020-06 is available here: https://www.hud.gov/sites/dfiles/OCHCO/documents/20-06hsngml.pdf (last visited August 14, 2020).

[14]    The report is available here: https://www.hudoig.gov/sites/default/files/2020-04/Single%20Family%20Mortgage%20Forbearance%20Brief.pdf (last visited August 14, 2020).

66.    HUD's OIG ultimately concluded that information from mortgagees and servicers was "incomplete, inconsistent, dated, and unclear" because, among other things, not all mortgage servicer websites provided readily accessible information, the information about the duration of forbearance was inconsistent; the information was not brought up to date to meet the mandates of the final CARES Act; and/or the servicer "gave the impression" that a lump sum payment was necessary at the end of the forbearance.

67.    The CFPB's May 2020 Complaint Bulletin, covering complaints mentioning coronavirus keywords, echoed HUD OIG findings and the House Financial Services Committee's criticisms, observing, among common complaints, that consumers were unable to reach customer service representatives and faced long hold times, and were informed by their mortgage servicers that they would have to repay 90-day forbearances in a lump sum at the end of the 90-day period.[15]

## III.    Approximately 4.58 Million Homeowners with Federally-backed Loans Are in a Forbearance Program, Many of them Unwittingly.

68.    As of June 30, 4.58 million homeowners are in COVID-19 related forbearance plans, representing 8.6% of all active mortgages.[16]

69.    Some 6.8% of all GSE-backed loans and 12.3% of all FHA/VA loans

---

[15]    The CFPB's May Bulletin is accessible here: https://www.consumerfinance.gov/about-us/newsroom/cfpb-issues-consumer-complaint-bulletin/ and the Report, entitled *Complaint Bulletin, Complaints Mentioning Coronavirus Keywords*, is accessible here: https://files.consumerfinance.gov/f/documents/cfpb_complaint-bulletin_coronavirus-complaints.pdf (last visited August 14, 2020).

[16]    *See*    https://www.cnbc.com/2020/07/03/loans-in-coronavirus-mortgage-bailouts-see-largest-weekly-decline-yet.html (last visited August 14, 2020).

- 14 -

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

are currently in forbearance plans.[17]

70.     Federally backed mortgages (including GSEs Freddie Mac and Fannie Mae) constitute 62 percent of all first lien mortgages.[18]

71.     Mortgages owned by private lenders, such as banks, are not included in the relief proscribed by the CARES Act.

72.     About 30%, or roughly 14.5 million U.S. mortgages, are privately owned and not backed by any federal agency.[19]

73.     Approximately 11% of these privately-held mortgages remain in some type of forbearance or deferment program.



74.     Wells Fargo has stated publicly that it has deferred 2.5 million payments for consumer and small business customers since the start of the

[17]     *See*   https://www.blackknightinc.com/blog-posts/forbearance-volumes-reverse-course-for-largest-decline-yet/ (last visited August 14, 2020).

[18]     *See*   https://www.americanactionforum.org/insight/the-cares-act-and-mortgage-servicers/#ixzz6SxUvL79W (last visited August 14, 2020).

[19]     *See*   https://www.cnbc.com/2020/07/15/privately-held-mortgage-forbearance-may-be-difficult-for-americans-to-navigate.html (last visited August 14, 2020).

pandemic.[20]

## IV. Wells Fargo Unilaterally Opted Homeowners into Forbearance Program and Extended Homeowners' Forbearance Without Their Consent

75.     Since the passage of the CARES Act in late March, millions of homeowners across the country have attempted to obtain information from their mortgage servicers and lenders as to the specifics of their COVID-19 forbearance program.[21]

76.     As numerous media reports have detailed, many servicers unilaterally put borrowers into their mortgage forbearance program despite no clear indication of consent.[22]

77.     Thousands of homeowners were put into mortgage forbearance programs they did not request or had their forbearance period extended for an additional period of time without their consent, causing substantial problems for those homeowners.

78.     Being in forbearance prevents those homeowners from taking out new home loans or refinancing their existing mortgages (not to mention obtaining any additional credit).

79.     As told by a Wells Fargo mortgage servicer client, it is virtually impossible to obtain any form of credit for up to a year after a forbearance program has concluded:

> the note on his credit report saying the loan is in
> forbearance makes it impossible for him to refinance.

---

[20]     *See* https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited August 14, 2020).

[21]     *Homeowners are getting mortgage relief they didn't want*, Anna Bahney, May 2020 (https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

[22]     *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited August 14, 2020).

> Fannie Mae and Freddie Mac, which, along with the
> Federal Housing Administration and the Department of
> Veterans Affairs, fund or insure the vast majority of
> mortgages from lenders, do not allow borrowers with a
> loan in forbearance to either refinance or obtain a new
> loan until one year after the loan payments are up to date
> again.[23]

80.    When reached for comment, Wells Fargo stated: "[w]e encourage customers to continue making their payments if they can but are granting an immediate three-month payment suspension for any Wells Fargo Home Lending mortgage or home equity customer who requests assistance. For customers who contact us to take advantage of a payment suspension, we won't report past-due status to the consumer reporting agencies or charge late fees during the suspension period."[24]

81.    Wells Fargo continued by stating that "[c]customers who reach us by telephone will get an immediate verbal confirmation of their three-month payment suspension. Because our contact centers are experiencing significant call volumes, we encourage mortgage customers to log into their account on WellsFargo.com and click on the banner in the mortgage account, follow the easy steps to submit request for payment relief, and receive immediate confirmation. In either case, customers

---

[23]    *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited August 14, 2020) (stating that "It also puts barriers in front of homeowners who could really benefit now from refinancing and saving on their monthly payments. Servicers are swamped with those requests as well. Applications to refinance a home loan are currently up more than 200% from a year ago").

[24]    *See* https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited August 14, 2020).

will receive a confirmation letter within 7-10 days after our initial response."[25]

82.    Wells Fargo has acknowledged that merely inquiring about forbearance options should not result in a borrower's unwitting entry into the program.

83.    Specifically, Tom Goyda, a Wells Fargo consumer lending spokesperson admitted that, "[j]ust asking about a forbearance should not result in a forbearance being applied."[26]

84.    Despite these public statements, Wells Fargo has publicly acknowledged unilaterally opting Chapter 13 debtors into its COVID-19 mortgage forbearance program.

85.    According to a recent media report, Wells Fargo monitored the Chapter 13 bankruptcy dockets of its debtor clients and unilaterally opted them into its mortgage forbearance program.[27]

86.    That article, entitled *Troy Harlow has always made sure to pay his mortgage on time Wells Fargo had other plans for him*, details the plight of numerous borrowers who had been unwittingly enrolled in Wells Fargo's mortgage forbearance program:

> None of the borrowers in the lawsuit who were contacted by NBC News told the bank that they'd been affected by COVID-19, and **none had requested the bank's assistance because of it. Nor had they requested loan modifications**

---

[25]    *See* https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited August 14, 2020).

[26]    *See*              https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

[27]    *See* https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited August 14, 2020).

***when Wells Fargo claimed they wanted forbearance.*** In addition, none of the borrowers or their attorneys say they were contacted by Wells Fargo.

Asked about the discrepancies, Wells Fargo said that because it had seen references to COVID-19 in the borrowers' court filings, it provided forbearance.[28]

87.     When reached for comment, Wells Fargo did not deny the practice of unilaterally enrolling unwitting persons to its mortgage forbearance program:

During this unprecedented time, we've focused on ensuring that our customers who need assistance receive the benefits of available relief programs, the statement said.

In the early days of the pandemic, we provided immediate payment relief to customers in bankruptcy if a review of their court filings indicated they were impacted by COVID-19 or if they had a loan modification review in process.

In those cases, we notified the customers or their attorneys and filed a notice with the court. We followed up with customers in these circumstances after some raised questions and, in the majority of cases, those we have contacted wanted the payment relief. If a customer does not want a forbearance, we remove it and notify the bankruptcy courts.[29]

88.     The Wells Fargo spokeswoman declined to say whether the bank has benefited financially from making unrequested forbearance filings.[30]

89.     But, upon information and belief, Wells Fargo is compensated

---

[28]     *See*     https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited August 14, 2020) (emphasis added).

[29]     *Id.* (emphasis added).

[30]     *Id.*

financially by the various federal agencies on whose behalf it services borrowers' loans when it files forbearance notices and when it completes loan retention workout options with borrowers whose loans have been placed into forbearance pursuant to the CARES Act.

90.    Upon information and belief, for each loan placed into forbearance that Wells Fargo subsequently modifies in accordance with Fannie Mae and Freddie Mac's matrix for loan retention workout options, Wells Fargo receives an incentive fee of up to $1,500.00.[31]

91.    Upon information and belief, for each loan placed into forbearance for which Wells Fargo subsequently defers repayment of some or all of the forborne payments until loan maturity in accordance with Fannie Mae and Freddie Mac's matrix for loan retention workout options, Wells Fargo receives an incentive fee of $500.

92.    Upon information and belief, for each loan placed into forbearance for which Wells Fargo enters into a completed repayment plan in accordance with Fannie Mae and Freddie Mac's matrix for loan retention options, Wells Fargo receives an incentive fee of $500.32.

93.    Upon information and belief, Wells Fargo also receives servicing income for the loans it services, and Plaintiff is informed and believes and therefore allege that Wells Fargo is incentivized to modify its customers' mortgage loans following a CARES Act forbearance in a way that extends the loan's term and lowers the borrower's monthly mortgage payment in order to prevent "run off" of loan servicing rights, which occurs when borrowers sell their homes or refinance their

---

[31]    *See* https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#73c99373edc5 (last visited August 14, 2020).

[32]    *Id.*

mortgages.

94.    Implementing forbearance plans without customer approval is reminiscent of other troubling practices at Wells Fargo in recent years.[33]

95.    Starting next month, Fannie Mae has new rules benefiting loan servicers like Wells Fargo whose customers are in forbearance.[34] Normally, banks handling home loans held by Fannie Mae must continue forwarding borrowers' mortgage payments to the government entity, even when they stop paying.[35]

96.    But under the new rules, banks can stop advancing Fannie Mae borrowers' mortgage payments after four months if the borrowers have stopped paying because they are in forbearance programs.[36]

## V.    Impacts of Unwanted Forbearance on Consumers

97.    Wells Fargo's practice of unilaterally opting mortgagors into unwanted forbearance program is not limited to its Chapter 13 debtor clients.

98.    Rather, as detailed extensively herein, many homeowners were put into forbearance programs they did not want which has caused injury to those homeowners.[37]

99.    Even if mortgagees do not report forborne accounts as delinquent, there

---

[33]    *See* https://www.nbcnews.com/news/all/wells-fargo-pay-3-billion-over-fake-account-scandal-n1140541 (last visited August 14, 2020).

[34]    https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited August 14, 2020).

[35]    *Id.*

[36]    *Id.*

[37]    *See* https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

are nonetheless many practical and immediate impacts of participating in a mortgage forbearance program; chief among them is that participation in a forbearance program prohibits homeowners from taking out new loans or refinancing their existing mortgages.[38]

100.    Wells Fargo has made note on the reports they send to credit reporting agencies that the homeowners who they have placed in forbearance—including those who never requested it—have suspended their mortgage payments.[39]

101.    Fannie Mae and Freddie Mac, which, along with the Federal Housing Administration and the Department of Veterans Affairs, fund or insure the vast majority of mortgages from lenders, do not allow borrowers with a loan in forbearance to either refinance or to obtain a new loan until one year after the loan payments are up to date again.[40]

## VI.    Wells Fargo's Practice of Unilaterally Opting Consumers Into a Forbearance Program Prompts Hundreds of Consumer Complaints

102.    The lack of clarity around Wells Fargo's mortgage forbearance programs has caused great stress to thousands of homeowners and led to many consumer complaints.

103.    Frustration seeps through long threads on social media channels populated with mortgage borrowers unnerved by, among other things, their inability to reach lenders over the phone and upset with the forbearance assistance they are

---

[38]    The Cares Act is clear that participation in a forbearance program should not negatively impact mortgagee's credit scores. According to the CARES Act, if a mortgagee is in forbearance because of the pandemic, their loan status is to be reported as current on payments.

[39]    *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited August 14, 2020).

[40]    *Id.*

offered once someone answers their calls.[41]

104.    Complaints filed with the CFPB have risen dramatically since the beginning of the COVID-19 outbreak, and many of those come from homeowners who complain that they were placed in forbearance without requesting it.[42]

105.    Oversight of the forbearance program is woefully inadequate, so it's unsurprising that the biggest coronavirus problems are related to mortgages," said Mike Litt, the consumer campaign director at U.S. PIRG.[43]

106.    A representative complaint of a person who filed a complaint with the CFPB noted that Wells Fargo unilaterally opted her into a mortgage forbearance program without her consent:

> I contacted my mortgage servicer . . . for informational purposes only, to see what programs they were offering during the COVID-19 pandemic . . . I stated I did NOT want to be on a forbearance plan.
>
> The stress of the situation has affected my physical and mental well-being, strained my personal relationships as well as the ability to do my job.  I have spent hours on the phone, and writing letters . . . I wonder, how many others this is happening to?[44]

107.    A recent article in Forbes details the experience of Morgan Davis, a furloughed clothing designer, who called Wells Fargo to ask for help with her FHA

---

[41]    https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5  (last visited August 14, 2020).

[42]    https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

[43]    *Id.*

[44]    https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

loan.[45]

108.    According to the borrower, Wells Fargo offered to suspend her mortgage for three payments without penalty, but Ms. Davis declined because "at the end of those three months, all my mortgage payments would be due at once."[46]

109.    Unbeknownst to Ms. David and against her wishes, Wells Fargo unilaterally opted her into a mortgage forbearance program.

110.    Ms. Davis only found out that she was entered into the program when she attempted to pay her next month's mortgage and was informed that her "Wells Fargo checking and savings accounts are ineligible to pay [her] Wells Fargo mortgage."

111.    According to the Forbes article, Ms. Davis also received a letter confirming the receipt of her loan modification request, a request she says she never made.[47]

112.    Similarly, another Wells Fargo customer, Tammi Wilson, claims her mortgage was placed in forbearance after she clicked a link to coronavirus relief information on the bank's website and provided her contact information to receive related program materials.[48]

113.    According to a recent article, *Wells Fargo says it 'misinterpreted*

---

[45] https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited August 14, 2020).

[46] https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited August 14, 2020).

[47] *Id.*

[48] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited August 14, 2020).

*customers' intentions' in some forbearance cases*, when Ms. Wilson later discovered

that she no longer had an active account when she logged on to make a payment on

her loan:

> I click this button and next thing I know, I'm getting a
> thing that says I'm deferred and I can't reverse something
> I didn't even want. If you're going to help people, there
> is a super simple first step — just ask, 'Do you need our
> help?' [49]

114.    Another mortgagor similarly called Wells Fargo to get information and

later found out his mortgage was in forbearance.[50]

115.    The borrower said he sent an email to Wells Fargo, which services his

loan, because he "was asking to be educated on what [his] options were but someone

put me in this and never told me what it was."

116.    As with Ms. Davis and Ms. Wilson, when this Wells Fargo servicer

client went to make his next payment, he was informed that he could not because

there was no "eligible account to make the payment on."[51]

117.    When this Wells Fargo customer attempted to refinance (in order to take

advantage of record low mortgage rates), his mortgage broker informed him that the

loan was in forbearance, and he was therefore unable to refinance.

118.    The borrower again contacted Wells Fargo and asked to be removed

from forbearance. That was April 23, and he says his loan is still listed as in

forbearance.

119.    Similarly, a recent CNN.com article, entitled Homeowners are getting

---

[49]    *Id.*

[50]    https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html

[51]    *Id.*

- 25 -

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

mortgage relief they didn't want, details additional instances of the problem:

> 'I never asked to be in the program,' said D.J.
> Stavropoulos, a real estate agent in Atlanta who said he
> called his mortgage servicer, Wells Fargo, in March just
> to get information about how a forbearance would work.
>
> Nonetheless, at the beginning of May, he received a letter
> from Wells Fargo confirming that his loan was in
> forbearance.
>
> 'I was alarmed they were doing this behind my back,'
> Stavropoulos said. "I think the average person is as
> confused as I was and may be surprised to find they are
> in forbearance and not know it."[52]

120.    Unfortunately, these Wells Fargo clients' stories are not isolated incidents.

121.    Rather, the CFPB website is replete with additional instances of persons who were involuntarily and unwittingly opted into a mortgage forbearance program with Wells Fargo.

122.    For instance, this anonymous Wells Fargo customer was involuntarily placed into forbearance twice:

> My account with Wells Fargo was placed in forbearance
> or trial plan by mistake in XXXX, twice. First week of
> XX/XX/2020, the account goes into forbearance,
> payments are not accepted based on a problem with
> Wells Fargo systems and then the account goes out of the
> plan. Later, at the end of XXXX the account goes again
> in forbearance and I had to call Wells Fargo once again
> to get it removed. They finally did this on XXXX
> XXXX. I spoke with several representatives, the last one
> being XXXX XXXX who after several phones told me
> on XX/XX/XXXX that he got approval to issue a letter
> stating that the account was placed in forbearance by
> mistake and that he was only waiting for the legal
> department to approve the language of such letter. After
> waiting for a week, I spoke again to XXXX. XXXX on
> XX/XX/XXXX, who informed of the decision by Wells

---

[52]    https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

1   Fargo to not provide such letter. This situation has
2   generated significant issues on my side, as other lenders
    are now reluctant to provide any financing until the
3   situation gets resolved or some time goes by before they
    are willing to look at my applications again. The major
4   issue here, other than the account being inadvertently
    placed in forbearance is that Wells Fargo continue to
5   mislead customers telling them that accounts entering
    forbearance during covid19 will not impact credit scores,
6   but they massively fail in disclosing that credit score
    agencies will still be informed about the situation and
7   that a note on the report will indicate that at some point,
    the account was in forbearance. Even if this does not
8   affect scores, it DOES affect customers with an
    impeccable record of never having missed a single
9   payment or liability in their whole lives. Wells Fargo
    continue with their old practice of misleading customers.
10  A smart lender will always look through scores and if
    there is anything else on the report that could be a cause
11  for concern, then it's reasonable to believe that a note on
    the report such as the one Wells Fargo has now created
    on mine, could become a big issue to me in the future.[53]

12

13      123.     Another Wells Fargo customer called to obtain information regarding

14  the mortgage forbearance program and was unwittingly opted into the program

15  ultimately damaging his credit score:

16

17

18

19

20

21

22

23

24

25

26  _____

27  [53]    https://www.consumerfinance.gov/data-research/consumer-
28  complaints/search/detail/3678207 (last visited August 14, 2020).

I called Wells Fargo for information about what to do with mortgage during covid pandemic being wife and I lost our employment during New York State pause order. I was offered a forbearance agreement or deferral that I was assured I would receive paper work on and it would not be reported to credit reporting agency during this time of national pandemic. I was reluctant to go into anything but requested information be sent to me. Credit report indicates In forbearance it also indicates last payment received was XXXX but I have paid XXXX XXXX and XXXX. This has negatively affected My credit with all credit reporting agencies. I did not sign anything to agree to forbearance and subsequent calls to them I stressed that Im paying my mortgage and dont want a forbearance. Instead they listed it on my credit without authorization. When I called them they said it was an error n they are working on it. They ruined my wife and my credit.[54]

124.    These Wells Fargo clients were likewise opted into Wells Fargo's mortgage forbearance program without their consent:

- Wells Fargo put me into CARES act forbearance without my consent. I was unable to make a payment online like I usually do. I called and was on hold for an hour but finally was able to talk to a rep, named XXXX. I told them they put me into forbearance without my consent. He apologized and said that the system is like a " hair trigger " even though I did nothing to start a forbearance, I've never missed a payment, have no reason to apply for forbearance and am able to make payments. The rep said he would reverse the forbearance but that it would take 2-3 days and took my payment over the phone. This took place on XX/XX/20. I have recently been looking into refinancing with rates so low. I get an email today from my new potential lender stating that my credit report, which they pulled XX/XX/20, showed that my current mortgage with Wells Fargo is in forbearance, labeled " payment deferred ". This may affect my ability to refinance my home. Also, Wells Fargo is contacting me about refinancing. On the XXXX website and under the CARES act it states: As part of the recently enacted Coronavirus Aid, Relief and Economic Security ( CARES ) Act, mortgage accounts in forbearance as a result of COVID-19 cannot be reported negatively to the credit bureaus by lenders. The wrongs are in apply forbearance to my

_____

[54] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3662758 (last visited August 14, 2020).

mortgage without verbal OR written consent and the fact that they reported this forbearance to the credit bureaus. And now on my account showing the payment I made on the phone for my XXXX payment is deemed " unapplied funds " with the description on their website : We have received funds that are not sufficient to make a full payment on your loan. If we are automatically withdrawing your payments based on a recurring weekly, bi-weekly, or semi-monthly schedule, your funds remain unapplied until we have received an amount sufficient to make a full monthly payment for you. If you are on a repayment plan and have made an agreement to make payment amounts that are different from your regular monthly payment, some funds may be unapplied. This is infuriating and could cost me ~ $ XXXX in interest savings and a decrease in previously exceptional credit of XXXX.[55]

- Due to covid19 I asked for information on the wells Fargo forbearance process on my mortgage. I was told I would receive information by mail. When I received my letter I was told that I was eligible and to go online to confirm and cancel my automatic payments. Also it stated that if I didn't need the assistance no action was needed I could disregard and nothing more will be done. XX/XX/XXXX I noticed my payment didnt get drafted. Called XX/XX/XXXX. Was told I was in the forbearance program. I never requested this to be done, only asked for information. I requested that day and twice since requested but it has not processed to be removed from the program.[56]

- Due to a job loss, I reached out to Wells Fargo and asked for information on their Covid-19 mortgage relief program. To clarify, I only asked for information on the program. The representative on the phone stated that an information packet would be mailed to me. About a week later, a letter arrived from Wells Fargo stating that they are " confirming short term payment relief for the account. " This was not what I had requested. In addition, the letter states " We won't report this account to consumer reporting agencies. " It has now come to light that Wells Fargo has put a forbearance on the mortgage, preventing any ability to refinance. I am current on my mortgage payments and did not want to be part of their relief

---

[55] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3663700 (last visited August 14, 2020).

[56] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3661535 (last visited August 14, 2020).

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

program, but now I have a forbearance blemish on my mortgage.[57]

### PLAINTIFF JOSE URISTA

125.    Plaintiff Jose Urista has a mortgage serviced by Wells Fargo.  Wells Fargo collects payments and performs services for Mr. Urista's mortgage secured to his primary residence located in El Cajon, CA.

126.    Mr. Urista is currently in a Chapter 13 Bankruptcy Case in the Southern District of California Bankruptcy Court with case number: 19-00910-LA13.

127.    On or about mid-March of 2020, after being contacted by Wells Fargo regarding Covid-19 relief offers, Mr. Urista's spouse clicked on an informational link on Wells Fargo's website which offered only to "provide more information" about possible forbearance options.  However, in response Wells Fargo Bank, N.A. provided a temporary suspension of mortgage payments. This short-term suspension was provided for under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  Wells Fargo, without contacting his attorney or record, nor receiving consent in writing to place Mr Urista's mortgage in forebearance, place said mortgage in the CARES Act forebearance program described above.

128.    Mr. Urista's spouse merely clicked an informational link, and did not provide specific information, nor request a forbearance.  Neither Mr. Urista, nor his wife, nor their bankruptcy attorney consented in writing to put their mortgage loan in forbearance.

129.    Mr. Urista never made any request whatsoever in writing, orally, or via any other means to put his mortgage into forbearance.  Despite this, shortly thereafter Mr. Ursita received a letter from Wells Fargo which informed him, much to his

---

[57]    https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3658898 (last visited August 14, 2020).

surprise, that Wells Fargo had placed his mortgage into short-term payment relief—or forbearance— for six months.  The letter stated that his monthly mortgage obligations had been suspended until October 1, 2020.

130.    Mr. Urista did not request a forbearance of his mortgage loan payment obligations; he did not contact Wells Fargo about a forbearance and did not—and does not—want a forbearance of his mortgage payment obligations.

131.    Wells Fargo placed Mr. Urista's loan in forbearance without his consent, and incorrectly reported this to credit reporting agencies such that Mr. Urista now suffers from negative credit reporting, a lack of the ability to refinance at historically low rates, and a loss of the interest on the payments he has been timely making to Wells Fargo to pay his mortgage, which they have been not crediting to his account due to the unauthorized forbearance.

## CLASS ALLEGATIONS

132.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and a class of similarly situated individuals.

133.    Plaintiff seeks to represent the following classes:

> **Nationwide Class**: All persons with a mortgage loan serviced by Wells Fargo whose mortgage was placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their request or whose forbearance term was involuntarily extended without the request of the homeowner.

> **California Class**: All persons with California addresses with a mortgage loan serviced by Wells Fargo whose mortgage was placed into Wells Fargo COVID-19 Mortgage Forbearance Program without their request or

whose forbearance term was involuntarily extended
without the request of the homeowner.[58]

134.    Numerosity: Members of the Nationwide and California classes
(collectively, the "Classes") are so numerous that joinder of all members is
impracticable. While the exact number of Class Members remains unknown at this
time, upon information and belief, there are tens of thousands of putative Class
Members throughout the United States who are generally ascertainable by appropriate
discovery. A class action is the only feasible method of adjudicating the rights of the
affected borrowers, and, absent allowance of a certification of a class action, a failure
of justice will result.

135.    Commonality: This action involves common questions of law and fact,
which predominate over any questions affecting individual Class Members. These
common legal and factual questions include, but are not limited to, the following:
whether Wells Fargo engaged and engages in the practices complained of and
whether such actions violate the law, as alleged. Specifically, the common question
of law is whether Defendants' practice of unilaterally opting its mortgagor clients into
its COVID-19 mortgage forbearance program so that they were unable to, among
other things, obtain additional credit and/or to refinance their existing mortgage
loans, violates the law.

136.    Typicality: Plaintiff's claims are typical of those of the other Class
Members because, inter alia, all members of the Class were injured through the
common misconduct described above and were subject to Wells Fargo's unfair and
unlawful conduct. Plaintiff is advancing the same claims and legal theories on behalf
of himself and all members of the Class.

---

[58]     Plaintiff reserves the right to modify or to amend the definition of any
proposed class and/or subclass before the Court determines whether certification is
appropriate and as the parties engage in discovery.

137.    Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class in that he has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

138.    Superiority: Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

139.    The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class Members for the wrongs alleged because Wells Fargo would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

140.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of

common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

141.    Plaintiff does not anticipate any difficulty in the management of this litigation.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT CAL. CIV. CODE § 1785.1, ET SEQ. ("CCCRAA")

(On Behalf of Plaintiff and the California Class)

142.    Plaintiff re-alleges and incorporates by reference the above-numbered paragraphs

143.    Mr. Urista on behalf of himself and the California Class of similarly situated individuals brings the action under the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785, et seq. ("CCCRAA").

144.    Mr. Urista (and the members of the California Class) is/are a consumer as that term is defined by Cal. Civ. Code § 1785.3(b).

145.    In the regular course of its business operations, Wells Fargo routinely furnishes information to credit reporting agencies pertaining to transactions between Wells Fargo and its consumers, so as to provide information as to a consumer's credit worthiness, credit standing and credit capacity.

146.    This action concerns Wells Fargo's furnishing of false derogatory information on Mr. Urista's consumer credit report, as defined by Cal. Civ. Code § 1785.3(c).

147.    Specifically, Wells Fargo furnished the information to the credit reporting agencies (as defined by Cal. Civ. Code § 1788.3(d)) that Mr. Urista was in forbearance, while Mr. Urista did not request to be placed in the forbearance, requested to be excluded from the forbearance program and never request Wells Fargo to extend a term of forbearance.

148.    Wells Fargo's reported information is also misleading because it implies that Mr. Urista requested to be in the forbearance when the opposite is true.

149.    Further, Wells Fargo failed to account for a number of payments Mr. Urista has made since May of 2020, which should have decreased Mr. Urista's principle balance owed to Wells Fargo on his mortgage, yet instead Wells Fargo falsely reported a larger amount due to Wells Fargo on Mr. Urista's credit report.

150.    Wells Fargo, its agents, subsidiaries, and partners are "persons" as defined under the CCCRAA § 1788.3(j).

151.    Wells Fargo furnished and continues to furnish information it knows is false, incomplete, misleading, and inaccurate in violation of Cal. Civ. Code § 1785.25(a).

152.    The foregoing acts and omissions constitute numerous and multiple violations of the CCCRAA.

153.    As evidenced above, Wells Fargo's violation of the CCRAA is willful.

154.    As a result of each and every violation of the CCCRAA, Mr. Urista and California Class members are entitled to damages; attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1) and, Cal. Civ. Code § 1785.31(d); punitive damages of $100.00 up to $5,000.00 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B); and equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b).

## SECOND CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA ROSENTHAL ACT
### CAL. CIV. CODE § 1788, ET SEQ. (RFDCPA)

(On Behalf of Plaintiff and the California Class)

155.    Plaintiff re-alleges and incorporates by reference the above-numbered paragraphs.

156.    Wells Fargo is a "debt collector" as defined under the Cal. Civ. Code §

1788.2(b) because it collects, in the ordinary course of busines, on behalf of itself, numerous debts and payments from consumers.

157.    This matter involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.  As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(e)-(f);

158.    As discussed above, Mr. Urista entered into a consumer credit transaction, involving an extension of credit pertaining to a certain Wells Fargo loan.

159.    Wells Fargo, without authority or consent of Mr. Urista or other consumers, Wells Fargo placed Mr. Urista and thousands of other California consumers into forbearance.

160.    Further, while Mr. Urista never asked to be in forbearance, Wells Fargo continued to keep Mr. Urista in this program unwillingly, while collecting monthly mortgage payments and failing to apply these payments towards the principal balance and interest of the loan.

161.    Wells Fargo made representations that it will not place individuals into forbearance or extend the forbearance period beyond a consumer requests, and yet, it did so despite having no authority to do so under the law or agreement of consumers.

162.    As such, Wells Fargo violated 15 U.S.C. § 1692e, 1692e(5), 1692e(10), 1692f (all of which are incorporated in Cal. Civ. Code 1788.17) for making misrepresentations regarding forbearance, placing unwilling consumers into forbearance,  and extending consumers' forbearance periods without their requests or authorization.

163.    Wells Fargo also falsely *communicated* to the credit bureaus that Mr. Urista and the other similarly situated California class members are in forbearance, in violation of 15 U.S.C. § 1692e(8), also incorporated in Cal. Civ. Code § 1788.17. Wells Fargo's false communications with third parties regarding Mr. Urista's account, and the amount still due and owing, were also false under 1692e, 1692e(2),

- 36 -

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

1692e(5), and 1692e(10) (all of which are incorporated into the Rosenthal Act under Cal. Civ. Code 1788.17).

164.    Wells Fargo continued to collect the monthly mortgage fees, despite placing Mr. Urista in forbearance and failing to apply these funds towards his mortgage account's principle balance.

165.    As such, by failing to decrease the principal balance and interest after receiving payments from Mr. Urista, Wells Fargo collected an amount not owed in violation of 15 U.S.C. §§ 1692f, and 1692f(1) (incorporated through Cal. Civ. Code 1788.17).

166.    Therefore, Mr. Urista seeks statutory damages, attorneys' fees and costs, pursuant to Cal. Civ. Code § 1788.30.

## THIRD CAUSE OF ACTION
## CAL. BUS. PROF. CODE § 17203
## PUBLIC INJUNCTIVE RELIEF
**(**On behalf of the California Sub-Class)

167.    Plaintiff realleges and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

168.    Plaintiff and Defendant are each "person(s)" as that term is defined by Cal. Bus. & Prof. C. § 17201.  Cal. Bus & Prof. C. § 17204 authorizes a private right of action on both an individual and representative basis.

169.    Cal. Bus.  & Prof. C. §  17204, a provision of the Unfair Competition Law (B & P C §§  17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein, but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, a private Plaintiffs who have suffered a financial injury may sue to obtain relief for others.

170.    "Unfair competition" is defined by Bus. & Prof. Code § 17200 as

encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

171.    An "injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009).

**A. Unlawful Prong**

172.    By knowingly and intentionally placing their customers in forebearances without their consent, Defendant Wells Fargo has routinely engaged in unlawful business practices.

173.    As described above, the lending practices described herein by Defendant Wells Fargo violated Cal. Civ. C. § 1785 and § 1788.

174.    Because Defendant Wells Fargo's business entailed violations of both Cal. Civ. C. §§ 1785 and 1788, Wells Fargo violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq., which provides a cause of action for an "unlawful" business act or practice perpetrated on consumers.

175.    Defendants violated Cal. Bus. & Prof. Code §§17200, et. seq. through unfair, unlawful, and deceptive business practices.  Defendant Wells Fargo violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq., which provides a cause of action for an "unlawful" business acts or practices perpetrated on consumers.

176.    Defendant Wells Fargo had other reasonably available alternatives to further its legitimate business interests, other than the conduct described herein, such as continuing its massive campaign to provide loans to consumers at unreasonably high interest rates designed to perpetrate default and a cycle of perpetual payments.

177.    Plaintiff suffered actual monetary financial injury in that his payments

- 38 -

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

made to Defendant for his mortgage were not credited to pay down the principle balance on his mortgage.

178.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

179.    Plaintiff acting as Private Attorney General pursuant to Cal. Business and Professions Code § 17203 seeks public injunctive relief, to benefit the general public from further future injuries to future Wells Fargo customers and victims of the unlawful conduct described above, directly by enjoining Wells Fargo from committing future similar injuries to the general public.

**B. Unfair Prong:**

180.    Defendant Wells Fargo's actions and representations constitute an "unfair" business act or practice under § 17200 in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

181.    Without limitation, the business practices describe herein are "unfair" and shock the conscience because they offend established public policy, violate California statutory protections, and are objectively immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that Defendant's conduct caused Plaintiff and the Class Members to incur debts and damage to their credit as a result of their policies regarding forced forbearances and inaccurate credit reporting.

182.    The conduct described above by Defendant Wells Fargo has a tendency to harm the general public in that Wells Fargo is one of the largest mortgage services in the United States, and any member of the general public may one day become and/or involuntarily have a loan serviced by Wells Fargo, thus their unfair and unlawful conduct has the ability to harm any member of the California general public in the future if not stopped by this court.

183.    At a date presently unknown to Plaintiff, but at least four years prior to

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

the filing of this action, and as set forth above, Defendant committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, et seq., as described herein.

184.    Despite Wells Fargo's express representation on its website that it complies with the laws, their conduct described above is in direct violation of California law.

185.    Defendant could and should have furthered its legitimate business interests by not perpetrating fraud on the entire representative class of California borrowers by placing Mr. Urista and other similarly situated class members into a forbearance without their consent.

186.    Plaintiff, members of the Class and the general public could not have reasonably avoided the injury suffered by each of them.

187.    Wells Fargo has a strong financial incentive to continue to place members of the class and Plaintiff in forbearances without their consent, thus Wells Fargo's unlawful and unfair business practices pose a risk of injuring other members of the general public in the future.

188.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date, and is a source of considerable revenue to Defendant Wells Fargo.

189.    Plaintiff seeks public injunctive relief to benefit the general public directly by bringing an end to Defendant Wells Fargo's unfair business practices which threaten future injury to the general public. Specifically, an injunction requiring Wells Fargo to cease placing California individuals in mortgage forbearances without their prior express written consent.

## **FOURTH CAUSE OF ACTION**

## **REQUEST FOR INJUNCTIVE RELIEF**

(On Behalf of Plaintiff & the Nationwide Class)

190.    Plaintiff re-alleges and incorporates by reference the above-numbered paragraphs.

191.    Plaintiff and the Nationwide Class are entitled to an injunction permanently enjoining Defendants from engaging in the acts and practices above as to any person who is a member, or could become a member, of the class of persons described in this suit.

192.    Plaintiff and the Nationwide Class are entitled to a preliminary injunction, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from engaging in the acts and practices described herein.

193.    Plaintiff asserts that, absent an injunction to prevent such misconduct, Defendants and their attorneys, agents, vendors, and/or other representatives will continue to engage in the unlawful and unfair conduct described herein.

194.    The harm faced by the Plaintiff and the Nationwide Class outweigh any "harm" that will be sustained by Defendants if the preliminary injunction were granted.

195.    These far outweigh Defendants' interest in profiting in connection with the impermissible enrolling of unwitting Wells Fargo mortgagor clients into its COVID-19 mortgage forbearance program.

196.    Issuing a preliminary injunction will not adversely affect the public interest but rather will enhance it.

197.    The posting of a bond is not a prerequisite to the issuance of a preliminary injunction in this case because Defendants cannot demonstrate that preserving the status quo will cause it cognizable economic harm.

198.    Plaintiff asks the Court to set this application for preliminary injunction

- 41 -

Complaint – *Jose Urista vs. Wells Fargo, et. al.*

for hearing if the parties are unable to agree to a preliminary injunction and, after hearing the request, issue a preliminary injunction against Wells Fargo enjoining it from the actions set out above.

## FIFTH CAUSE OF ACTION

## UNJUST ENRICHMENT

(On Behalf of Plaintiff and the Nationwide Class)

199.    Plaintiff re-alleges and incorporates by reference the above-numbered paragraphs.

200.    Plaintiff and members of the Nationwide Class have conferred a benefit upon Wells Fargo in the following ways:

    a.   Wells Fargo collected mortgage payments from Plaintiff and the Nationwide Class that Wells Fargo did not apply to mortgage balances thus earning "float" income on unapplied funds, which accrues for the time between when consumers pay and when funds are remitted to the loans' owners.

    b.   By placing Plaintiff and the Nationwide Class into forbearance without their consent, Wells Fargo prevented Plaintiff and the Nationwide Class from being able to re-finance their mortgage loans with other mortgage lenders during a time of historically low interest rates, thus capturing the mortgage loans of Plaintiff and members of the Nationwide Class, locking them in at higher interest rates while continuing to earn profit from interest payments and other fees (and significantly impeding their chances of being able to refinance for the foreseeable future).

    c.   Wells Fargo extended the lengths of the mortgages of Plaintiff and members of the Nationwide Class by at least 3 months, and in many

cases much longer, thus accruing the benefits of continued servicing of those loans, including collecting interest and fees, collecting a per-loan servicing fee, and publicly reporting to investors that they continued to service those mortgages'

    d.    Wells Fargo earned additional fees for, among other things, filing incentive payments after loans are placed in forbearance.

    e.    Taking advantage of new rules made pursuant to the CARES Act, Wells Fargo no longer forwards Fannie Mae borrowers' mortgage payments after four months if the borrowers have stopped paying because they are in forbearance programs, allowing Wells Fargo to continue holding those funds.

201.    Wells Fargo's practice of placing Plaintiff and members of the Nationwide Class into forbearance without their consent resulted in Plaintiff and members of the Nationwide Class being denied the benefit of having their payments applied to their mortgage accounts and re-financing their loans at a lower interest rate.

202.    Wells Fargo appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Nationwide Class.

203.    Under principles of equity and good conscience, Wells Fargo should not be permitted to retain the monies they unjustly received as a result of its wrongful conduct described herein.

204.    Accordingly, Plaintiff, on behalf of themselves and the other members of the Nationwide Class, seek restitution and disgorgement of all amounts by which Wells Fargo has been unjustly enriched.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief and judgment against Defendants and each of them, as follows:

A.    Certifying this action as a class action;

B.    Designating Plaintiff as class representative under Federal Rule of Civil Procedure 23;

C.    Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

D.    Awarding Costs of suit;

E.    Awarding damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Class in an amount to be determined at trial;

F.    Awarding Statutory damages pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) to California Class;

G.    Awarding Attorney's fees pursuant to Cal. Civ. Code § 1785.31(a)(1);

H.    Awarding statutory damages pursuant to Cal. Civ. Code § 1788.30, attorneys' fees and costs, to California Class;

I.    Equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);

J.    Awarding punitive damages, to the extent permitted by law, in an amount to be determined at trial;

K.    Awarding Plaintiff incentive awards;

L.    Awarding Plaintiff and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law and

M.    Imposing an injunction preventing Defendants from engaging in the conduct described herein and requiring Defendants to restore the Plaintiff's

and class members accounts to status quo ante, as though the account was never treated as being in forbearance status;

N.    Public injunctive relief through the role as a Private Attorney General, pursuant to Cal. Bus. & Prof. Code §§ 17203, permanently and immediately prohibiting Defendant Wells Fargo from engaging in the unlawful conduct alleged herein, including but not limited to the placing of individual borrowers in forbearances on their mortgages, without their express written and/or verbal consent; and

O.    Awarding such other and further relief as the Court may deem just and proper.

                                                        **BLC LAW CENTER, APC**

Dated:  August 28, 2020

                                          By:  */s/ Ahren A. Tiller, Esq.*
                                                Ahren A. Tiller, Esq.
                                                Attorneys for Plaintiff
                                                JOSE URISTA, and all those
                                                similarly situated.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs, individually and on behalf of all others similarly situated, are entitled to, and demand, a trial by jury on all issues triable by jury.


                                    **BLC LAW CENTER, APC**

Dated:  August 28, 2020


                                    By:  */s/ Ahren A. Tiller, Esq.*
                                         Ahren A. Tiller, Esq.
                                         Attorneys for Plaintiff
                                         JOSE URISTA, and all those
                                         similarly situated.

Complaint – *Jose Urista vs. Wells Fargo, et. al.*